PMH

# U.S. District Court
## Southern District of Florida (Ft Lauderdale)
## CRIMINAL DOCKET FOR CASE #: <u>0:19–mj–06549–PMH</u> All Defendants

Case title: USA v. Finkelstein

Date Filed: 11/19/2019
Date Terminated: 11/19/2019

Assigned to: Magistrate Judge Patrick M. Hunt

**Defendant (1)**

**Stuart Finkelstein**
*TERMINATED: 11/19/2019*

| Pending Counts | Disposition |
|---|---|
| None | |

| Highest Offense Level (Opening) | |
|---|---|
| None | |

| Terminated Counts | Disposition |
|---|---|
| None | |

| Highest Offense Level (Terminated) | |
|---|---|
| None | |

| Complaints | Disposition |
|---|---|
| 18:1341.F. Mail Fraud | |

**Plaintiff**

| USA | represented by | **Jodi Anton** |
|---|---|---|
| | | U.S. Attorney's Office |
| | | 500 E. Broward Boulevard |
| | | Suite 700 |
| | | Fort Lauderdale, FL 33394 |
| | | 954–660–5692 |
| | | Fax: 954–356–7336 |
| | | Email: jodi.anton@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Retained* |

| Date Filed | # | Page | Docket Text |
|------------|---|------|-------------|
| 11/19/2019 | 1 | 3 | Magistrate Removal of Complaint from Southern District of New York Case number in the other District 19–mj–10645 as to Stuart Finkelstein (1). (tpl) (Additional attachment(s) added on 11/19/2019: # 1 Arrest Warrant) (tpl). (Entered: 11/19/2019) |
| 11/19/2019 | 2 | 16 | Order to Unseal as to Stuart Finkelstein Signed by Magistrate Judge Patrick M. Hunt on 11/19/2019. (tpl) (Entered: 11/19/2019) |
| 11/19/2019 | 3 | 17 | Minute Order for proceedings held before Magistrate Judge Patrick M. Hunt: Initial Appearance in Rule 5(c)(3)/Rule 40 Proceedings as to Stuart Finkelstein held on 11/19/2019. Bond recommendation/set: Stuart Finkelstein (1) $150,000 PSB. Date of Arrest or Surrender: 11/19/2019. Temporary attorney Brian Griffin appeared telephonically. (Digital 11:20:45) Signed by Magistrate Judge Patrick M. Hunt on 11/19/2019. (tpl) (Entered: 11/19/2019) |
| 11/19/2019 | 4 | 18 | WAIVER of Rule 5(c)(3)/Rule 40 Hearing by Stuart Finkelstein (tpl) (Entered: 11/19/2019) |
| 11/19/2019 | 5 | 19 | $150,000 PSB Bond Entered as to Stuart Finkelstein Approved by Magistrate Judge Patrick M. Hunt. *Please see bond image for conditions of release.* (tpl) (Additional attachment(s) added on 11/19/2019: # 1 Restricted Bond with 5th Page) (tpl). (Entered: 11/19/2019) |
| 11/19/2019 | 6 | 32 | ORDER OF REMOVAL ISSUED to District of Southern District of New York as to Stuart Finkelstein. Closing Case for Defendant. Signed by Magistrate Judge Patrick M. Hunt on 11/19/2019. *See attached document for full details.* (tpl) (Entered: 11/19/2019) |

# 19 MAG 10645

Approved: _Rushmi Bhaskaran_
RUSHMI BHASKARAN
Assistant United States Attorney

Before: THE HONORABLE KATHARINE H. PARKER     19-6549-Hunt
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - - X
:
UNITED STATES OF AMERICA          :
:      SEALED COMPLAINT
- v. -                            :
:      Violations of
:      18 U.S.C. §§ 1341,
:      1028A, 1512(c),
:      1623, and 2
STUART FINKELSTEIN,              :
:      COUNTY OF OFFENSE:
Defendant.          :      NEW YORK
- - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

MASON POSILKIN, being duly sworn, deposes and says that he is a Special Agent with the U.S. Attorney's Office for the Southern District of New York, and charges as follows:

## COUNT ONE
(Mail Fraud)

1.    From at least in or about October 2013, up to and including at least in or about May 2019, in the Southern District of New York and elsewhere, STUART FINKELSTEIN, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and did take and receive therefrom, such matters and things, and did cause to be delivered by mail and such carriers, according to the directions thereon, and at the places at which they were directed to be delivered by the person to whom they were addressed, such matters and things, to wit, FINKELSTEIN filed or caused to be filed fraudulent lawsuits pursuant to the Americans

with Disabilities Act (the "ADA") against various public establishments in Florida and New York on behalf of individuals who neither authorized those lawsuits nor visited those establishments, in order to obtain cash payments for himself, and caused correspondence to be mailed from an attorney in Manhattan, New York in furtherance of his fraudulent scheme.

(Title 18, United States Code, Sections 1341 and 2.)

## COUNT TWO
### (Aggravated Identity Theft)

2. From in or about October 2013 up to and including in or about May 2019 in the Southern District of New York and elsewhere, STUART FINKELSTEIN, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, FINKELSTEIN possessed, used, and transferred the personal identification information of Victim-1 and Victim-2 in connection with the mail fraud scheme charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

## COUNT THREE
### (Obstruction of Justice)

3. From at least in or about June 2018 up to and including at least in or about July 2018 in the Southern District of New York and elsewhere, STUART FINKELSTEIN, the defendant, did corruptly obstruct, influence, and impede an official proceeding, and attempted to do so, to wit, FINKELSTEIN made materially false statements, and threatened Victim-2 to attend a hearing, in a federal civil litigation filed in the United States District Court for the Southern District of New York.

(Title 18, United States Code, Sections 1512(c)(2) and 2.)

## COUNT FOUR
### (Obstruction of Justice)

4. From at least in or about February 2019 up to and including at least in or about May 2019 in the Southern District of New York and elsewhere, STUART FINKELSTEIN, the defendant,

2

did corruptly obstruct, influence, and impede an official proceeding, and attempted to do so, to wit, FINKELSTEIN offered to return a portion of a settlement payment, and made materially false statements to the attorney of a restaurant FINKELSTEIN sued, in order to cause that attorney to withdraw a motion pending in the United States District Court for the Southern District of New York.

(Title 18, United States Code, Sections 1512(c)(2) and 2.)

## COUNT FIVE
(False Declarations Before A Court)

5.   On or about March 1, 2019, in the Southern District of New York and elsewhere, STUART FINKELSTEIN, the defendant, under oath and in a declaration, verification, and statement made under penalty of perjury pursuant to Title 28, United States Code, Section 1746, in a proceeding before and ancillary to a court and grand jury of the United States, knowingly did make false material declarations, and made and used other information including books, papers, documents, records, recording and other material knowing the same to contain false, material declaration, to wit, FINKELSTEIN, in a declaration he filed in the United States District Court for the Southern District of New York, stated under penalty of perjury that Victim-2 authorized a lawsuit filed under the ADA, when in truth and fact, Victim-2 had not.

(Title 18, United States Code, Sections 1623(a) and 2.)

## COUNT SIX
(False Declarations Before A Court)

6.   On or about April 18, 2019, in the Southern District of New York and elsewhere, STUART FINKELSTEIN, the defendant, under oath and in a declaration, verification, and statement made under penalty of perjury pursuant to Title 28, United States Code, Section 1746, in a proceeding before and ancillary to a court and grand jury of the United States, knowingly did make false material declarations, and made and used other information including books, papers, documents, records, recording and other material knowing the same to contain false, material declaration, to wit, FINKELSTEIN, in a declaration he filed in the United States District Court for the Southern District of New York, stated under penalty of perjury that Victim-2 authorized a lawsuit filed under the ADA, when in truth and fact, Victim-2 had not.

3

(Title 18, United States Code, Sections 1623(a) and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

7. I am a Special Agent with the U.S. Attorney's Office for the Southern District of New York. I have been personally involved in the investigation of this matter, and I base this affidavit on that experience, and on my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview of the Scheme

8. Based on my involvement in this investigation, and as described in further detail below, I know that STUART FINKELSTEIN, the defendant, is a lawyer who has filed, or has caused to be filed, over 300 lawsuits pursuant to the Americans with Disabilities Act ("ADA") on behalf of two purported plaintiffs, Victim-1 and Victim-2. These lawsuits were filed in the United States District Courts for the Southern District of Florida and the Southern District of New York against various public establishments (the "Victim Public Establishments"). Each of these lawsuits made representations that Victim-1 and Victim-2 were represented by FINKELSTEIN or an associate. Furthermore, each of these lawsuits alleged that Victim-1 and Victim-2 attempted to visit the Victim Public Establishments, but were unable to do so because of those establishments' alleged noncompliance with the ADA. The lawsuits sought attorney's fees and injunctive relief to address the alleged noncompliance with the ADA.

9. The lawsuits filed by STAURT FINKELSTEIN, the defendant, however, were fraudulent. Victim-1 and Victim-2 neither retained nor authorized FINKELSTEIN to file ADA lawsuits on their behalf. Contrary to FINKELSTEIN's representations, Victim-1 and Victim-2 never attempted to visit the Victim Public Establishments. Instead, FINKELSTEIN stole the identities of Victim-1 and Victim-2, made numerous false representations to the Victim Public Establishments and the courts in the Southern District of New York and the Southern District of Florida,

4

obstructed official judicial proceedings, and then settled these fake lawsuits in order to collect approximately $930,000 in attorney's fees.

10.   Furthermore, I know from my review of documents in this case that STUART FINKELSTEIN, the defendant, caused correspondence to be mailed trough private and commercial mail carriers in furtherance of this scheme.

## Background

11.   Based on my training and experience, as well as my work on this investigation, I understand the following, among other things, about civil lawsuits filed pursuant to the ADA:

   a.   The ADA provides that no one shall be discriminated against based on disability in any place of "public accommodation." 42 U.S.C. § 12182(a). Discrimination includes the failure to remove "architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv).  The ADA can be enforced through private lawsuits, which allow plaintiffs with disabilities to request injunctive relief to address discrimination caused by an architectural barrier, and to collect attorney's fees.

   b.   To assert standing under the ADA, the plaintiff must: (1) allege past injury, (2) demonstrate that it is reasonable to infer that the discriminatory treatment will continue, and (3) demonstrate that it is reasonable to infer that the plaintiff intends to return to the establishment again. To allege past injury, the plaintiff must make some effort to visit the public establishment that is being sued.

12.   Based on my review of New York State court records, I know that STUART FINKELSTEIN, the defendant, was admitted to the New York State Bar on or about December 13, 1989.  In approximately 2006, in response to an investigation opened into FINKELSTEIN for attorney misconduct, FINKELSTEIN submitted an application to resign as an attorney.  On or about February 13, 2007, FINKELSTEIN's application was granted, which resulted in him being disbarred in New York pursuant to an order issued by the Supreme Court of the State of New York (the "Order").  That Order required FINKELSTEIN to "desist and refrain from (1) practicing law in any form, either as principal, agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge,

Justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at law." The Order did not expressly limit its jurisdictional reach to New York.

## FINKELSTEIN's Fraudulent Lawsuits Filed in the Name of Victim-1

13. I know from my discussions with an attorney who had been licensed to practice law in Florida ("Attorney-1"), as well as my review of Attorney-1's documents, that in approximately 2012, Attorney-1 retained STUART FINKELSTEIN, the defendant, as a consultant to serve as an expert in ADA litigation. In approximately 2013, FINKELSTEIN told Attorney-1 that Victim-1, a disabled wheelchair user residing in Florida, agreed to be an ADA plaintiff by visiting certain public places with FINKELSTEIN, investigating whether those places were compliant with the ADA, and where appropriate, filing lawsuits against non-compliant establishments. Between 2013 and 2016, FINKELSTEIN, through Attorney-1, filed approximately over 280 such lawsuits with Victim-1 as the named plaintiff (the "Victim-1 Lawsuits") in the United States District Court for the Southern District of Florida. These lawsuits generated approximately $650,000 in attorney fees, a portion of which Attorney-1 paid FINKELSTEIN.

14. I know from my review of Attorney-1's documents that in approximately March 2016, STUART FINKELSTEIN, the defendant, submitted his resignation to Attorney-1.

15. In approximately April 2016, Victim-1 submitted a complaint to The Florida Bar. Based on my review of that complaint, as well as my interviews of Victim-1, I have learned the following, among other things:

a. Victim-1 stated that STUART FINKELSTEIN, the defendant, approached Victim-1 at a gas station in Florida while Victim-1 was filling gas in Victim-1's car. Victim-1 stated that FINKELSTEIN told Victim-1 that FINKELSTEIN worked for an attorney and asked Victim-1 if Victim-1 would be willing to assist FINKELSTEIN in assessing whether certain public establishments were accessible for wheelchair users. FINKELSTEIN offered to provide Victim-1 the addresses of certain public establishments, as well as gas money. Victim-1 stated that Victim-1 told FINKELSTEIN, in some and substance, that Victim-1 was glad to help, and gave FINKELSTEIN Victim-1's phone number. Victim-1, however, did not retain FINKELSTEIN or anyone

6

else to file lawsuits on Victim-1's behalf. In addition, Victim-1 said that FINKELSTEIN never provided Victim-1 with any addresses to visit.

      b.  Later, FINKELSTEIN called Victim-1 and asked Victim-1 to meet FINKELSTEIN at a bank in Florida. FINKELSTEIN asked Victim-1, in some and substance, to sign a document for a place FINKELSTEIN was going to have Victim-1 visit that FINKELSTEIN represented was not accessible. Once again, FINKELSTEIN did not provide Victim-1 with the address of any public place to visit, and Victim-1 did not authorize FINKELSTEIN to file any lawsuits on Victim-1's behalf.

      c.  In approximately early 2016, FINKELSTEIN told Victim-1 that news outlets might try to ask Victim-1 some questions, and requested Victim-1 to not respond. Soon thereafter, Victim-1 learned from the news that Victim-1 was the apparent plaintiff in several ADA lawsuits. Victim-1, who never authorized anyone to file these lawsuits, demanded that FINKELSTEIN provide any documents that Victim-1 allegedly signed in connection with the Victim-1 lawsuits. Based on my involvement in this investigation, I believe that FINKELSTEIN never responded to Victim-1's request, and that in March 2016, FINKELSTEIN submitted his resignation to Attorney-1.

     16.  Based on my review of documents from Attorney-1 and my discussions with Attorney-1, I know that following the resignation of STUART FINKELSTEIN, the defendant, Attorney-1, provided Victim-1 with the copies of settlement agreements that were purportedly signed by Victim-1. I know from Victim-1 that when Victim-1 reviewed these agreements, Victim-1 saw that Victim-1's signatures had been forged.

     17.  I know from my review of documents from The Florida Bar that, as a result of Victim-1's complaint, The Florida Bar opened disciplinary proceedings against Attorney-1. Attorney-1, who believed that Victim-1 had authorized all of the Victim-1 Lawsuits but acknowledged his failure to adequately supervise STUART FINKELSTEIN, the defendant, agreed to submit his resignation to The Florida Bar.

## FINKELSTEIN's False Statements to Regain Admission to the New York Bar

     18.  Based on my review of records maintained by the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, in Brooklyn, New York, I have

learned that in approximately September 2014, STUART FINKELSTEIN, the defendant, moved for reinstatement to the New York State Bar.  In connection with that motion, FINKELSTEIN made or caused to be made several false representations concerning FINKELSTEIN's work history in Florida.  For example, FINKELSTEIN's motion stated, falsely, that following his 2007 disbarment, he "neither practiced law nor held himself out as a lawyer while disbarred."  In describing his employment history in Florida, FINKELSTEIN made no mention of the fact that he assisted Attorney-1 in litigating ADA claims. FINKELSTEIN also included his 2013 tax returns as an attachment to his application, which omitted the income that Attorney-1 paid FINKELSTEIN or a company that FINKELSTEIN established to receive payments from Attorney-1.

19.  Based on my review of court records, I know that STUART FINKELSTEIN, the defendant, was reinstated to the New York State Bar on or about March 16, 2016.

## FINKELSTEIN's Perjurious Statements and Fraudulent Lawsuits Filed in the Name of Victim-2

20.  I have searched public databases to determine whether STUART FINKELSTEIN, the defendant, has filed any lawsuits in the Southern and Eastern Districts of New York since his reinstatement to the New York Bar.  Based on that review, I have learned that, beginning in approximately August 2017, FINKELSTEIN filed approximately 30 ADA lawsuits in those Districts on behalf of an individual ("Victim-2") residing in the state of New York (the "Victim-2 Lawsuits"). I know from reviewing FINKELSTEIN's bank records that FINKELSTEIN has collected approximately $270,000 by settling the Victim-2 Lawsuits.

21.  However, I know from my discussions with Victim-2 that Victim-2 neither authorized the Victim-2 Lawsuits, nor visited any of the Victim Public Establishments that FINKELSTEIN had sued. In addition, Victim-2 has explained the following, among other things, about Victim-2's prior dealings with FINKELSTEIN:

a.  Approximately twenty years ago, FINKELSTEIN had represented Victim-2 in connection with a personal injury lawsuit approximately.

b.  In approximately the spring or summer of 2017, Victim-2's family member ("Family Member-1") was looking

8

for a lawyer to represent Family Member-1 in a personal injury lawsuit. Victim-2 referred Family Member-1 to FINKELSTEIN. Until approximately February 2019, Victim-2 spoke to FINKELSTEIN occasionally about the referral, and in one instance, Victim-2 accompanied Family Member-1 to an in-person meeting with FINKELSTEIN in a hotel in Brooklyn. At this meeting, FINKELSTEIN saw that Victim-2 was limping due to a back condition.

       c. Because Victim-2 referred Family Member-1 to FINKELSTEIN, FINKELSTEIN gave Victim-2 a referral fee, paid in three installments between approximately January 2018 to August 2018.

       d. In approximately August 2017, Victim-2 told FINKELSTEIN that Victim-2 had been denied disability benefits. FINKELSTEIN offered to help Victim-2 by referring Victim-2 to a disabilities benefits attorney. To make the referral, FINKELSTEIN asked Victim-2 to provide FINKELSTEIN with Victim-2's medical records. Victim-2 did so in approximately April 2018.

    22. Because Victim-2 never retained STUART FINKELSTEIN, the defendant, to file the Victim-2 lawsuits, nor visited the Victim Public Establishments that FINKELSTEIN sued, FINKELSTEIN made the following materially false declarations, under penalty of perjury, in the United States District Court for the Southern District of New York:

       a. On or about March 1, 2019, in a federal civil proceeding which FINKELSTEIN initiated with Victim-2 as the named plaintiff, FINKELSTEIN submitted a declaration, made under the penalty of perjury pursuant to Title 28, United States Code, Section 1746, stating that Victim-2 authorized that civil proceeding, when in truth and fact, Victim-2 had not.

       b. On or about April 18, 2019, in a federal civil proceeding which FINKELSTEIN initiated with Victim-2 as the named plaintiff, FINKELSTEIN submitted a declaration, made under the penalty of perjury pursuant to Title 28, United States Code, Section 1746, stating that Victim-2 authorized that civil proceeding, when in truth and fact, Victim-2 had not.

    23. In addition, I know from my involvement in this investigation and my review of documents that STUART FINKELSTEIN, the defendant, caused correspondence to be mailed

through private and commercial mail carriers in furtherance of
this scheme. For example, on or about August 10, 2018, an
attorney ("Attorney-2") representing a public establishment
FINKELSTEIN sued in Victim-2's name mailed FINKELSTEIN
settlement documents and a settlement check. Attorney-2 mailed
these documents from Attorney-2's office in Manhattan, New York,
to a private post office box controlled by FINKELSTEIN.

### FINKELSTEIN's Obstruction of Justice

24. In or about January 2018, STUART FINKELSTEIN, the
defendant, filed a lawsuit ("Lawsuit-1") against a restaurant
("Restaurant-1") with Victim-2 as the named plaintiff. I have
reviewed court filings from Lawsuit-1 and email correspondence
between STUART FINKELSTEIN, the defendant, and the attorneys
representing Restaurant-1 (the "Restaurant-1 Attorneys").[1] Based
on my review of these documents, as well as my discussions with
Victim-2, I have learned the following, among other things:

a. On or about June 26, 2018, a federal
district court judge sitting in the Southern District of New
York ("Judge-1") ordered FINKELSTEIN to provide the Restaurant-1
Attorneys with Victim-2's fully-executed medical power of
attorney by on or about June 27, 2018.

b. On or about June 27, 2018, FINKELSTEIN
provided the Restaurant-1 Attorneys with a power of attorney
document that was purportedly signed by Victim-2. According to
Victim-2, Victim-2 did not sign this document and Victim-2's
signature was forged.

c. On or about July 2, 2018, FINKELSTEIN
provided the Restaurant-1 Attorneys with a revised power of
attorney form, purportedly signed by Victim-2, and a medical
release form signed by FINKELSTEIN pursuant to the power of
attorney form. According to Victim-2, Victim-2 did not sign
this power of attorney form and never authorized FINKELSTEIN to
permit his medical records to be released to the Restaurant-1
Attorneys.

d. On or about July 2, 2018, Judge-1 ordered
FINKELSTEIN and Victim-2 to attend a court conference on or
about July 13, 2018 (the "July 13 Conference").

---

[1] The email correspondence was obtained pursuant to judicially-authorized
warrants obtained on August 16, 2019 (the "August 16 Warrant").

e. According to Victim-2, prior to the July 13 Conference, FINKELSTEIN called Victim-2 and threatened to divulge confidential information about Victim-2 to others unless Victim-2 appeared with FINKELSTEIN at the July 13 Conference. FINKELSTEIN also demanded that Victim-2 arrive at the court conference in a wheelchair, even though Victim-2 did not use one. To that end, FINKELSTEIN sent money to Victim-2 for Victim-2 to purchase a wheelchair.

f. According to court documents and Victim-2, Victim-2 appeared with FINKELSTEIN at the July 13 Conference. At FINKELSTEIN's direction, and as a result of FINKELSTEIN's threat against Victim-2, Victim-2 falsely informed the court that Victim-2 signed a power of attorney document authorizing FINKELSTEIN to release Victim-2 medical records, even though Victim-2 had not signed the document and never authorized FINKELSTEIN to release Victim-2's medical records to the Restaurant-1 Attorneys.

g. Shortly before or after the July 13 Conference, a photograph of FINKELSTEIN and Victim-2 in a wheelchair was taken outside the United States District Court for the Southern District of New York. FINKELSTEIN also gave Victim-2 cash after the conference.

25. I know from court records and FINKELSTEIN's bank records that in approximately June 2018, FINKELSTEIN settled an ADA lawsuit ("Lawsuit-2") against a restaurant ("Restaurant-2"), filed with Victim-2 as the named plaintiff in the United States District Court for the Southern District of New York. According to court records, on or about February 20, 2019, a lawyer ("Attorney-3") for Restaurant-2 requested the judge ("Judge-2") to reopen Lawsuit-2 to determine whether FINKELSTEIN fraudulently filed it.

26. On or about April 3, 2019, Judge-2 scheduled a court conference for May 1, 2019 (the "May 1 Conference") and ordered FINKELSTEIN and Victim-2 to appear. Attorney-3 informed me that, prior to the May 1 Conference, FINKELSTEIN offered to return some of the settlement funds back to Restaurant-2 if Restaurant-2 dropped its request for a hearing. In addition, FINKELSTEIN provided Attorney-3 documents purporting to show that Victim-2 authorized Lawsuit-2.

27. I have reviewed the documents that STUART FINKELSTEIN, the defendant, provided Attorney-3. They include (1) call records with Victim-2, (2) redacted bank statements

11

showing a $500 cash debit, and (3) a photograph of Victim-2 and FINKELSTEIN from the July 13 Conference. Based on my involvement in this investigation, including my discussions with Victim-2, I believe that these documents do not establish that Victim-2 retained FINKELSTEIN or authorized Lawsuit-2, or any of the Victim-2 Lawsuits.

28. On the basis of FINKELSTEIN's promise to return some of the settled funds, Attorney-3 and Restaurant-2 agreed to drop their request for a hearing. On or about April 30, 2019, at the request of Attorney-3, Judge-2 cancelled the scheduled conference.

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of STUART FINKELSTEIN, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

MASON POSILKIN
Special Agent
U.S. Attorney's Office, Southern
   District of New York


Sworn to before me this
12th day of November, 2019

THE HONORABLE KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

Mod AO 442 (09/13) Arrest Warrant    AUSA Name & Telno:  Rushmi Bhaskaran, Tel: 212-637-2439

# UNITED STATES DISTRICT COURT
## for the
Southern District of New York

| | | |
|---|---|---|
| United States of America | ) | **19 MAG 10645** |
| v. | ) | Case No. |
| Stuart Finkelstein | ) | *19-6549-Hunt* |
| | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## ARREST WARRANT

To:    Any authorized law enforcement officer

      **YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*  Stuart Finkelstein                                                                   ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☑ Complaint
☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:

  Violations of 18 U.S.C. §§ 1341, 1028A, 1512(c), 1623, and 2

Date:    11/12/2019                                     _____
                                                                        *Issuing officer's signature*

City and state:    New York, NY                    Hon. Katharine H. Parker, USMJ
                                                                        *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ |
| Date: _____ |
| _____ |
| *Arresting officer's signature* |
| _____ |
| *Printed name and title* |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-6549-Hunt

UNITED STATES OF AMERICA,
                    Plaintiff
vs.

Stuart Finkelstein,
                    Defendant.
_____/

### O R D E R

THIS CAUSE is before the Court for the initial appearance of the above-named

defendant(s) on a SEALED COMPLAINT.

UPON ORAL motion of the government in open court that the complaint be

unsealed, it is hereby

ORDERED AND ADJUDGED that the SEALED COMPLAINT be unsealed as to

all parties in this case.

DONE AND ORDERED at Fort Lauderdale, Florida this 19th day of November,

2019.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

cc: All Counsel

# COURT MINUTES/ORDER

## United States Magistrate Judge Patrick M. Hunt

Date: 11/19/19    Time: 11:00 am

Defendant: Stuart Finkelstein    J#: _____  Case #: 19-6549-Hunt

AUSA: Jodi Anton - Duty    Attorney: Brian Griffin, Esq (Temp)

Violation: Mail Fraud (Removal from the Southern District of New York)

Proceeding: Initial Appearance    CJA Appt: _____

Bond/PTD Held: ☐ Yes  ☐ No    Recommended Bond: _____

Bond Set at: $150,000-PSB Cosigned by 2 family members   Co-signed by: _____

- ☑ Surrender and/or do not obtain passports/travel docs
- ☑ Report to PTS as _directed_/or _____ x's a week/month by phone: _____ x's a week/month in person
- ☐ Random urine testing by Pretrial Services
  Treatment as deemed necessary
- ☐ Refrain from excessive use of alcohol
- ☐ Participate in mental health assessment & treatment
- ☑ Maintain or seek full-time employment/education
- ☑ No contact with victims/witnesses
- ☑ No firearms
- ☐ Not to encumber property
- ☐ May not visit transportation establishments
- ☐ Home Confinement/Electronic Monitoring and/or Curfew _____ pm to _____ am, paid by _____
- ☐ Allowances: Medical needs, court appearances, attorney visits, religious, employment
- ☑ Travel extended to: SDFL, SDNY, EDNY, NJ and State of Tenn
- ☑ Other: Appear to all hearings and commit no new crimes

Language: _____

Disposition:
All parties present.
The court signed Order to Unseal.
Deft advised of his rights and charges.

Drain Griffin appeared by phone.

Deft signed Waiver of Removal, Order of Removal signed by the court and Commitment To Another District.

See bond for special conditions.

**NEXT COURT APPEARANCE**  Date:  Time:  Judge:  Place:

Report RE Counsel: _____

PTD/Bond Hearing: _____

Prelim/Arraign or Removal: _____

Status Conference RE: _____

Check if Applicable: ☐    The motion to continue to permit the defendant to hire counsel is GRANTED. The time from today through the rescheduled date is excluded from the deadline for trial as computed under the Speedy Trial Act, since the ends of justice served by granting this continuance outweigh the interests of the defendant and the public in speedy trial.

D.A.R. 11:20:45 _____    Time in Court: 30 Mins

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No: 19-6549-Hunt

UNITED STATES OF AMERICA
                    Plaintiff,

vs.

Stuart Finkelstein,
                    Defendant.
_____/

## WAIVER OF REMOVAL HEARING

I, Stuart Finkelstein , charged in a proceeding pending in the Southern District of New York, with Mail Fraud, et al., having been arrested in the Southern District of Florida and taken before Patrick M. Hunt, a United States Magistrate Judge for that district, who informed me of the charge and of my right to retain counsel or request the assignment of counsel if I am unable to retain counsel, and to have a hearing or execute a waiver thereof, do hereby waive a hearing before the aforementioned magistrate judge and consent to the issuance of a warrant for my removal to the Southern District of New York, where the aforesaid charge is pending against me.

_____
Date

_____
Signature of Defendant

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

(Rev. 03/2016)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### APPEARANCE BOND:

### CASE NO.: 19-6549-Hunt

UNITED STATES OF AMERICA:
                    Plaintiff,

v.                                   **JAIL #:**

Stuart Finkelstein,

                 Defendant,

I, Stuart Finkelstein, the undersigned defendant and I or we, the undersigned sureties, jointly and severally acknowledge that we and our personal representatives, jointly and severally, are bound to pay the United States of America, the sum of $ *150,000 -PSB - cosigned 2 family members*

### STANDARD CONDITIONS OF BOND

The conditions of this bond are that the defendant:

    1. Shall appear before this court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of the defendant's release as may be ordered or notified by this court or any other United States District Court to which the defendant may be held to answer or the cause transferred. The defendant is to abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment. This is a continuing bond, including any proceeding on appeal or review, which shall remain in full force and effect until such time as the court shall order otherwise.

    2. May not at any time, for any reason whatever, leave the Southern District of Florida or other District to which the case may be removed or transferred after he or she has appeared in such District pursuant to the conditions of this bond, without first obtaining written permission from the court, except that a defendant ordered removed or transferred to another district may travel to that district as required for court appearances and trial preparation upon written notice to the Clerk of this court or the court to which the case has been removed or transferred. The Southern District of Florida consists of the following counties: **Monroe, Miami-Dade, Broward, Palm Beach, Martin, St. Lucie, Indian River, Okeechobee, and Highlands.**

    3. May not change his or her present address as recorded on this bond without prior permission in writing from the court.

    4. Is required to appear in court at all times as required by notice given by the court or its clerk to the address on this bond or in open court or to the address as changed by permission from the court. The defendant is required to ascertain from the Clerk of Court or defense counsel the time and place of all scheduled proceedings on the case. In no event may a defendant assume that his or her case has been dismissed unless the court has entered an order of dismissal.

    5. The defendant must cooperate with law enforcement officers in the collection of a DNA sample if the collection is required by 42 U.S.C. Section 14135a.

    6. Shall not commit any act in violation of state or federal laws.

**DEFENDANT: Stuart Finkelstein**
**CASE NUMBER: 19-6549-Hunt**
**PAGE TWO**

## SPECIAL CONDITIONS OF BON

In addition to compliance with the previously stated conditions of bond, the defendant must comply with the special conditions checked below:

✔ a. Surrender all passports and travel documents, if any, to the Pretrial Services Office and not obtain any travel documents during the pendency of the case;

✔ b. Report to Pretrial Services as follows: ( ✔ *as directed or__ time(s) a week in person and__ time(s) a week by telephone;*

__ c. Submit to substance abuse testing and/or treatment;

__ d. Refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. §802), without a prescription by a licensed medical practitioner;

__ e. Participate in mental health assessment and/or treatment;

__ f. Participate and undergo a sex offense specific evaluation and treatment;

✔ g. Maintain or actively seek full-time employment; ~ no practicing of ADA Law

__ h. Maintain or begin an educational program;

✔ i. Avoid all contact with victims of or witnesses to the crimes charged, except through counsel;

✔ j. Refrain from possessing a firearm, destructive device or other dangerous weapons;

__ k. None of the signatories may sell, pledge, mortgage, hypothecate, encumber, etc., any property they own until the bond is discharged, or otherwise modified by the Court;

__ l. May not visit commercial transportation establishment: *airports, seaport/marinas, commercial bus terminals, train stations, etc.;*

__ m. No access to the internet via any type of connectivity device (*i.e., computers, pda's, cellular phones, tv's*), and follow instructions as outlined in the agreement waiver provided to you by Pretrial Services;

__ n. **HOME CONFINEMENT PROGRAM** The defendant shall participate in one of the following home confinement program components and abide by all the requirements of the program which ( ) **will not** or ( ) **will include electronic monitoring or other location verification system, paid for by the defendant** *based upon his/her ability to pay ( )* or **paid for by Pretrial Services ( ).**

   __ **Curfew:** You are restricted to your residence every day from___ to____, or as directed by the Court.

   __ **Home Detention:** You are restricted to your residence at all times except for: ( ) **medical needs or treatment, (** ) **court appearances, (** ) **attorney visits or court ordered obligations, and** ( ) **other** _____

__ o. **HALFWAY HOUSE PLACEMENT** The defendant shall reside at a halfway house or community corrections center and abide by all the rules and regulations of the program.
   You are restricted to the halfway house at all times except for: ( ) **employment; (** ) **education;** ( ) **religious services; (** ) **medical, substance abuse, or mental health treatment; (** ) **attorney visits;** ( ) **court appearances; (** ) **court ordered obligations; (** ) **reporting to Pretrial Services; and** ( ) **other** ____

✔ p. May travel to and from: SDFL, SDNY & DNY & New Jersey, and must notify Pretrial Services of travel plans before leaving and upon return. & the state of TN

**DEFENDANT: Stuart Finkelstein**
**CASE NUMBER: 19-6549-Hunt**
**PAGE THREE**

q. Comply with the following additional conditions of bond:
    Shall appear at all court hearing and commit no new crimes.

## PENALTIES AND SANCTIONS APPLICABLE TO DEFENDANT

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, an order of detention, as provided in 18 U.S.C. §3148, forfeiture of any bail posted, and a prosecution for contempt as provided in 18 U.S.C. §401, which could result in a possible term of imprisonment or a fine.

The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

Title 18 U.S.C. §1503 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to intimidate or attempt to intimidate a witness, juror or officer of the court; 18 U.S.C. §1510 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to obstruct a criminal investigation; 18 U.S.C. §1512 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to tamper with a witness, victim or informant; and 18 U.S.C. §1513 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to retaliate against a witness, victim or informant, or threaten to do so.

It is a criminal offense under 18 U.S.C. §3146, if after having been released, the defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If the defendant was released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction for:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more the defendant shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, the defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, the defendant shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, the defendant shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear may result in the forfeiture of any bail posted, which means that the defendant will be obligated to pay the full amount of the bond, which may be enforced by all applicable laws of the United States.

**DEFENDANT: Stuart Finkelstein**
**CASE NUMBER: 19-6549-Hunt**
**PAGE FOUR**

## PENALTIES AND SANCTIONS APPLICABLE TO SURETIES

Violation by the defendant of any of the foregoing conditions of release will result in an immediate obligation by the surety or sureties to pay the full amount of the bond. Forfeiture of the bond for any breach of one or more conditions may be declared by a judicial officer of any United States District Court having cognizance of the above entitled matter at the time of such breach, and if the bond is forfeited and the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each surety jointly and severally for the amount of the bond, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and other laws of the United States.

## SIGNATURES

I have carefully read and I understand this entire appearance bond consisting of four pages, or it has been read to me, and, if necessary, translated into my native language, and I know that I am obligated by law to comply with all of the terms of this bond. I promise to obey all conditions of this bond, to appear in court as required, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions outlined in this bond for violations of the terms of the bond.

If I am an agent acting for or on behalf of a corporate surety, I further represent that I am a duly authorized agent for the corporate surety and have full power to execute this bond in the amount stated.

| NOTE: Page 5 of this form MUST be completed before the bond will be accepted for filing. |
|---|

### DEFENDANT

Signed this _____ day of _____, 20 19 at FORT LAUDERDALE , Florida

Signed and acknowledged before me:

DEFENDANT: (Signature) _____

_____        _____        _____
Witness                                                City                                                        State

### CORPORATE SURETY

Signed this _____ day of _____, 20 19 at FORT LAUDERDALE , Florida

SURETY: _____        AGENT: (Signature) _____

_____        PRINT NAME: _____
City                              State

### INDIVIDUAL SURETIES

Signed this _____ day of 11/19 , 20 19 at FORT LAUD , Florida    Signed this 19 day of Nov , 20 19 at FORT LAUD , Florida

SURETY: (Signature) Evelyn Finkelstein    SURETY: (Signature) Judy Von Tilzer

PRINT NAME: Evelyn Finkelstein    PRINT NAME: Judy Von Tilzer

RELATIONSHIP TO DEFENDANT: Wife    RELATIONSHIP TO DEFENDANT: Friend

Davie ____ Fla ____    Davie ____ FL ____
City            State                              City            State

Signed this _____ day of _____, 20 19 at FORT LAUD , Florida    Signed this _____ day of _____, 20 19 at FORT LAUD , Florida

SURETY: (Signature) _____    SURETY: (Signature) _____

PRINT NAME: _____    PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____    RELATIONSHIP TO DEFENDANT: _____

_____        _____        _____        _____
City                              State                              City                              State

### APPROVAL BY THE COURT

Date: 11/19/19

**PATRICK M. HUNT**
**UNITED STATES MAGISTRATE JUDGE**

22





(Rev. 03/2016)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### APPEARANCE BOND:

### CASE NO.: 19-6549-Hunt

UNITED STATES OF AMERICA:
               Plaintiff,

v.
                                    **JAIL #:**

Stuart Finkelstein,
               Defendant,

I, Stuart Finkelstein, the undersigned defendant and I or we, the undersigned sureties, jointly and severally acknowledge that we and our personal representatives, jointly and severally, are bound to pay the United States of America, the sum of $ *150,000 -PSB - cosigned 2 family members*

## STANDARD CONDITIONS OF BOND

The conditions of this bond are that the defendant:

1. Shall appear before this court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of the defendant's release as may be ordered or notified by this court or any other United States District Court to which the defendant may be held to answer or the cause transferred. The defendant is to abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment. This is a continuing bond, including any proceeding on appeal or review, which shall remain in full force and effect until such time as the court shall order otherwise.

2. May not at any time, for any reason whatever, leave the Southern District of Florida or other District to which the case may be removed or transferred after he or she has appeared in such District pursuant to the conditions of this bond, without first obtaining written permission from the court, except that a defendant ordered removed or transferred to another district may travel to that district as required for court appearances and trial preparation upon written notice to the Clerk of this court or the court to which the case has been removed or transferred. The Southern District of Florida consists of the following counties: **Monroe, Miami-Dade, Broward, Palm Beach, Martin, St. Lucie, Indian River, Okeechobee, and Highlands.**

3. May not change his or her present address as recorded on this bond without prior permission in writing from the court.

4. Is required to appear in court at all times as required by notice given by the court or its clerk to the address on this bond or in open court or to the address as changed by permission from the court. The defendant is required to ascertain from the Clerk of Court or defense counsel the time and place of all scheduled proceedings on the case. In no event may a defendant assume that his or her case has been dismissed unless the court has entered an order of dismissal.

5. The defendant must cooperate with law enforcement officers in the collection of a DNA sample if the collection is required by 42 U.S.C. Section 14135a.

6. Shall not commit any act in violation of state or federal laws.

**DEFENDANT: Stuart Finkelstein**
**CASE NUMBER: 19-6549-Hunt**
**PAGE TWO**

## SPECIAL CONDITIONS OF BON

In addition to compliance with the previously stated conditions of bond, the defendant must comply with the special conditions checked below:

☑ a. Surrender all passports and travel documents, if any, to the Pretrial Services Office and not obtain any travel documents during the pendency of the case;

☑ b. Report to Pretrial Services as follows: ( ☑ *as directed or__ time(s) a week in person and__ time(s) a week by telephone;*

__ c. Submit to substance abuse testing and/or treatment;

__ d. Refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. §802), without a prescription by a licensed medical practitioner;

__ e. Participate in mental health assessment and/or treatment;

__ f. Participate and undergo a sex offense specific evaluation and treatment;

☑ g. Maintain or actively seek full-time employment; — no practicing of ADA Law

__ h. Maintain or begin an educational program;

☑ i. Avoid all contact with victims of or witnesses to the crimes charged, except through counsel;

☑ j. Refrain from possessing a firearm, destructive device or other dangerous weapons;

__ k. None of the signatories may sell, pledge, mortgage, hypothecate, encumber, etc., any property they own until the bond is discharged, or otherwise modified by the Court;

__ l. May not visit commercial transportation establishment: *airports, seaport/marinas, commercial bus terminals, train stations, etc.*;

__ m. No access to the internet via any type of connectivity device (*i.e., computers, pda's, cellular phones, tv's*), and follow instructions as outlined in the agreement waiver provided to you by Pretrial Services;

__ n. **HOME CONFINEMENT PROGRAM** The defendant shall participate in one of the following home confinement program components and abide by all the requirements of the program which ( ) **will not** or ( ) **will include electronic monitoring or other location verification system, paid for by the defendant** *based upon his/her ability to pay ( )* or **paid for by Pretrial Services ( ).**

__ **Curfew:** You are restricted to your residence every day from___ to____, or as directed by the Court.

__ **Home Detention:** You are restricted to your residence at all times except for: ( ) **medical needs or treatment, ( ) court appearances, ( ) attorney visits or court ordered obligations, and ( ) other** _____

__ o. **HALFWAY HOUSE PLACEMENT** The defendant shall reside at a halfway house or community corrections center and abide by all the rules and regulations of the program. You are restricted to the halfway house at all times except for: ( ) **employment; ( ) education; ( ) religious services; ( ) medical, substance abuse, or mental health treatment; ( ) attorney visits; ( ) court appearances; ( ) court ordered obligations; ( ) reporting to Pretrial Services; and ( ) other** ____

☑ p. May travel to and from: SDFL, SDNY & DNY & New Jersey & State of TN , and must notify Pretrial Services of travel plans before leaving and upon return.

DEFENDANT: Stuart Finkelstein
CASE NUMBER: 19-6549-Hunt
PAGE THREE

q. Comply with the following additional conditions of bond:
  Shall appear at all court hearing and commit no new crimes.

## PENALTIES AND SANCTIONS APPLICABLE TO DEFENDANT

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, an order of detention, as provided in 18 U.S.C. §3148, forfeiture of any bail posted, and a prosecution for contempt as provided in 18 U.S.C. §401, which could result in a possible term of imprisonment or a fine.

The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

Title 18 U.S.C. §1503 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to intimidate or attempt to intimidate a witness, juror or officer of the court; 18 U.S.C. §1510 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to obstruct a criminal investigation; 18 U.S.C. §1512 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to tamper with a witness, victim or informant; and 18 U.S.C. §1513 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to retaliate against a witness, victim or informant, or threaten to do so.

It is a criminal offense under 18 U.S.C. §3146, if after having been released, the defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If the defendant was released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction for:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more the defendant shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, the defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, the defendant shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, the defendant shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear may result in the forfeiture of any bail posted, which means that the defendant will be obligated to pay the full amount of the bond, which may be enforced by all applicable laws of the United States.

**DEFENDANT: Stuart Finkelstein**
**CASE NUMBER: 19-6549-Hunt**
**PAGE FOUR**

## PENALTIES AND SANCTIONS APPLICABLE TO SURETIES

Violation by the defendant of any of the foregoing conditions of release will result in an immediate obligation by the surety or sureties to pay the full amount of the bond. Forfeiture of the bond for any breach of one or more conditions may be declared by a judicial officer of any United States District Court having cognizance of the above entitled matter at the time of such breach, and if the bond is forfeited and the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each surety jointly and severally for the amount of the bond, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and other laws of the United States.

## SIGNATURES

I have carefully read and I understand this entire appearance bond consisting of four pages, or it has been read to me, and, if necessary, translated into my native language, and I know that I am obligated by law to comply with all of the terms of this bond. I promise to obey all conditions of this bond, to appear in court as required, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions outlined in this bond for violations of the terms of the bond.

If I am an agent acting for or on behalf of a corporate surety, I further represent that I am a duly authorized agent for the corporate surety and have full power to execute this bond in the amount stated.

| NOTE: Page 5 of this form MUST be completed before the bond will be accepted for filing. |
| --- |

### DEFENDANT

Signed this _____ day of _____, 20 19 at FORT LAUDERDALE , Florida
Signed and acknowledged before me:      DEFENDANT: (Signature) _____

_____         _____         _____
Witness                          City                            State

### CORPORATE SURETY

Signed this _____ day of _____, 20 19 at FORT LAUDERDALE , Florida
SURETY: _____         AGENT: (Signature) _____
                                              PRINT NAME: _____

_____         _____
City                            State

### INDIVIDUAL SURETIES

Signed this _____ day of 11/1, 20 19 at FORT LAUD , Florida
SURETY: (Signature) Evelyn Finkelstein
PRINT NAME: Evelyn Finkelstein
RELATIONSHIP TO DEFENDANT: Wife
Davie                    Fla
City                            State

Signed this 19 day of Nov , 20 19 at FORT LAUD , Florida
SURETY: (Signature) Jody Von Tilzer
PRINT NAME: Jody Von Tilzer
RELATIONSHIP TO DEFENDANT: Friend
Davie                    FL
City                            State

Signed this _____ day of _____, 20 19 at FORT LAUD , Florida
SURETY: (Signature) _____
PRINT NAME: _____
RELATIONSHIP TO DEFENDANT: _____

_____         _____
City                            State

Signed this _____ day of _____, 20 19 at FORT LAUD , Florida
SURETY: (Signature) _____
PRINT NAME: _____
RELATIONSHIP TO DEFENDANT: _____

_____         _____
City                            State

### APPROVAL BY THE COURT

Date: 11/19/19

**PATRICK M. HUNT**
**UNITED STATES MAGISTRATE JUDGE**

**DEFENDANT: Stuart Finkelstein**
**CASE NUMBER: 19-6549-Hunt**
**PAGE FIVE**

<u>ADDRESS AND CONTACT INFORMATION
FOR DEFENDANT AND SURETIES</u>

As indicated in condition 3 of this bond, the defendant "May not change his or her present address as recorded on this bond without prior permission in writing from the court." The current addresses of the defendant and sureties are as indicated below:

**DEFENDANT**

PRINT NAME: _Stuart Finkelstein_

STREET ADDRESS: _2440 Sw 81st Ave_

_Davie_ _FL_ _33324_
City          State          Zip

TELEPHONE: _954 333-8888_

**CORPORATE SURETY**

SURETY: _____

AGENT: _____

STREET ADDRESS: _____

_____
City          State          Zip

TELEPHONE: _____

**INDIVIDUAL SURETIES**

PRINT NAME: _Evelyn Finkelstein_      PRINT NAME: _Jody VonTilzer_

RELATIONSHIP TO DEFENDANT: _Wife_      RELATIONSHIP TO DEFENDANT: _Friend_

STREET ADDRESS: _2440 Sw 81st ave._      STREET ADDRESS: _2440 Sw 81st Ave #404_

_Davie Fla_ _Fla 33324_      _Davie_ _FL_ _33324_
City          State          Zip              City          State          Zip

TELEPHONE: _954 213 3235_      TELEPHONE: _954 507 0276_

PRINT NAME: _____      PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____      RELATIONSHIP TO DEFENDANT: _____

STREET ADDRESS: _____      STREET ADDRESS: _____

_____      _____
City          State          Zip              City          State          Zip

TELEPHONE: _____      TELEPHONE: _____

29





UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-6549-Hunt

UNITED STATES OF AMERICA
        Plaintiff,

   v.

Stuart Finkelstein,
        Defendant.
_____/

## <u>ORDER OF REMOVAL</u>

It appearing that in the Southern District of NewYork, a Criminal Complaint  was filed against the above-named defendant which charges with Mail Fraud; Aggravated Identity Theft; Obstruction of Justice and False Declarations Before a Court, and that the defendant was arrested in the Southern District of Florida and was given a hearing before United States Magistrate Judge Patrick M. Hunt at Fort Lauderdale, Florida, which officially committed the defendant for removal to the Southern District of New York, it is ORDERED AND ADJUDGED that the defendant be removed to the above-named district for trial on said charge.

And it further appearing that the defendant waived further hearings in the said removal proceedings held by the Magistrate Judge Patrick M. Hunt for removal and posted bail in the amount of $ _/50,000—PSB_____ which was approved by the United States Magistrate Judge Patrick M. Hunt, and it is further ORDERED that the defendant shall appear in the aforesaid district at such times and places as may be ordered by that District Court, in accordance with the terms and conditions of aforesaid bail bond furnished by the defendant, and it is further ORDERED that the funds, plus interest, which may have been deposited on behalf of this defendant with the Clerk of the Court under Bail Reform Act be transferred to the district where removed.

DONE AND ORDERED at Fort Lauderdale, Florida, this 19th ·  day of November, 2019.

                                    _____
                                    PATRICK M. HUNT
                                    UNITED STATES MAGISTRATE JUDGE

cc:  Miami, Financial